Eduard Korsinsky (EK-8989)
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Tel : 212-363-7500
Fax : 212-363-7171
Email: ek@zlk.com

*Attorneys for Plaintiff and the Proposed Class*
(Additional counsel appear on signature page)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FENG CHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEIBO CORPORATION, GAOFEI WANG, and HERMAN YU, Defendants. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES

## LAWS

This action is brought against Defendants Weibo Corporation. ("Weibo" or

the "Company"), Gaofi Wang, and Herman Yu ("collectively, the "Defendants")

whose address is /F, QIHAO Plaza, No. 8 Xinyuan S. Road, Chaoyang District, Beijing 100027, People's Republic of China. Plaintiff Feng Chen ("Plaintiff"), whose address is 12511 Palfrey Dr., Austin, TX 78727, by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Weibo, as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Weibo American Depositary Shares ("ADS") between April 28, 2016 and June 19, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Weibo is incorporated in the Cayman Islands and its principal executive offices are located at 8/F, QIHAO Plaza, No. 8 Xinyuan S. Road, Chaoyang District, Beijing 100027, People's Republic of China. Weibo's ADSs are traded on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "WB."

3.      Weibo operates as a social media platform for people to create, distribute, and discover Chinese-language content.

4.      As a result of the fraudulent conduct alleged herein, Plaintiff and other members of the Class purchased Weibo ADS at artificially inflated prices and suffered significant losses and damages once the truth emerged.

## JURISDICTION AND VENUE

5.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is properly laid in this Judicial District pursuant to §27 of the Exchange Act and 28. U.S.C. §1391(b). The acts and conduct complained of herein occurred in substantial part in this Judicial District.

8.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities

of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.     Plaintiff purchased Weibo securities within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

10.     Defendant Weibo, through its social media platform, provides an unprecedented and simple way for people and organizations to publicly express themselves in real time, interact with others on a massive global platform and stay connected with the world.

11.     Defendant Gaofei Wang ("Wang") is the Company's Chief Executive Officer ("CEO").

12.     Defendant Herman Yu ("Yu") is the Company's Chief Financial Officer ("CFO").

13.     Defendants in Paragraphs 10-12 are collectively referred to herein as the "Individual Defendants."

14.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)    was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)    approved or ratified these statements in violation of the federal securities laws.

15.    Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Weibos' business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

16.    As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States,

the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Weibos' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or

misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

18.    Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Weibo securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Weibos' business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Weibo securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

19.    Weibo is a leading social media platform for people to create, distribute and discover Chinese-language content. It provides an unprecedented and simple way for people and organizations to publicly express themselves in real time, interact with others on a massive global platform and stay connected with the world. Since our inception in 2010, Weibo has amassed a large user base.

20.    Weibo serves a wide range of users including ordinary people, celebrities and other public figures, as well as media outlets, businesses, government agencies, charities and other organizations, making it a microcosm of Chinese

society. For many people in China, Weibo allows them to be heard publicly and exposed to the rich ideas, cultures and experiences of the broader world. Media outlets use Weibo as a source of news and as a distribution channel for their headline news.

21.    Government agencies and officials use Weibo as an official communication channel for disseminating timely information and gauging public opinion to improve public services. Charities use Weibo to make the world a better place by launching charitable projects, seeking donations and volunteers and leveraging the celebrities and organizations on Weibo to amplify their social influence.

**B.    Material Misstatements and Omissions during the Class Period**

22.    On April 28, 2016, the Company filed a Form 20-F for the fiscal year ended December 31, 2015 (the "2015 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2015. The 2015 20-F was signed by Defendant Wang. The 2015 20-F also contained signed certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Wang and Yu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23.    The 2015 20-F stated that Weibo has "taken measures to delete or remove links to content that, to our knowledge, contains information that violates PRC laws and regulations," stating in relevant part:

*Regulations on Information Security*

Internet content in China is also regulated and restricted from a state security point of view. The Decision Regarding the Safeguarding of Internet Security, enacted by the Standing Committee of the National People's Congress and amended in 2009, makes it unlawful to: (i) gain improper entry into a computer or system of strategic importance; (ii) disseminate politically disruptive information; (iii) leak state secrets; (iv) spread false commercial information; or (v) infringe intellectual property rights.

The Administrative Measures for the Security Protection of International Connections to Computer Information Network, promulgated by the Ministry of Public Security in 1997, prohibit the use of the internet in ways that, among other things, result in a leakage of state secrets or the distribution of socially destabilizing content. Socially destabilizing content includes any content that incites defiance or violations of PRC laws or regulations or subversion of the PRC government or its political system, spreads socially disruptive rumors or involves cult activities, superstition, obscenities, pornography, gambling or violence. State secrets are defined broadly to include information concerning PRC's national defense affairs, state affairs and other matters as determined by the PRC authorities.

The Provisions on Technological Measures for Internet Security Protection, promulgated by the Ministry of Public Security in 2005, require all internet content provision operators to keep records of certain information about their users (including user registration information, log-in and log-out times, IP addresses, content and time of posts by users) for at least 60 days and submit the above information as required by laws and regulations. Internet content provision operators must regularly update information security systems for their websites with local public security authorities, and must also report any instances of public dissemination of prohibited content. If an internet content provision operator violates these measures, the PRC government may

revoke its Internet Content Provision License and shut down its websites.

In addition, the State Secrecy Bureau has issued provisions authorizing the blocking of access to any website it deems to be leaking state secrets or failing to comply with the relevant legislation regarding the protection of state secrets.

\*    \*    \*

Because Weimeng is an internet content provision operator, we are subject to laws and regulations relating to information security. To comply with these laws and regulations, ***Weimeng has completed the mandatory security filing procedures with local public security authorities. We regularly update our information security and content-filtering systems based on any newly issued content restrictions, and maintain records of user information as required by relevant laws and regulations. We have also taken measures to delete or remove links to content that, to our knowledge, contains information that violates PRC laws and regulations.***

Emphasis added.

24.    On April 27, 2017, the Company filed a Form 20-F for the fiscal year ended December 31, 2016 (the "2016 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2016. The 2016 20-F was signed by Defendant Wang. The 2016 20-F also contained signed certifications pursuant to SOX by Defendants Wang and Yu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25.    The 2016 20-F stated that Weibo has "taken measures to delete or remove links to content that, to our knowledge, contains information that violates PRC laws and regulations," stating in relevant part:

*Regulations on Information Security*

Internet content in China is also regulated and restricted from a state security point of view. The Decision Regarding the Safeguarding of Internet Security, enacted by the Standing Committee of the National People's Congress and amended in 2009, makes it unlawful to: (i) gain improper entry into a computer or system of strategic importance; (ii) disseminate politically disruptive information; (iii) leak state secrets; (iv) spread false commercial information; or (v) infringe intellectual property rights.

The Administrative Measures for the Security Protection of International Connections to Computer Information Network, promulgated by the Ministry of Public Security in 1997 and amended in 2011, prohibit the use of the internet in ways that, among other things, result in a leakage of state secrets or the distribution of socially destabilizing content. Socially destabilizing content includes any content that incites defiance or violations of PRC laws or regulations or subversion of the PRC government or its political system, spreads socially disruptive rumors or involves cult activities, superstition, obscenities, pornography, gambling or violence. State secrets are defined broadly to include information concerning PRC's national defense affairs, state affairs and other matters as determined by the PRC authorities.

The Provisions on Technological Measures for Internet Security Protection, promulgated by the Ministry of Public Security in 2005, require all internet content provision operators to keep records of certain information about their users (including user registration information, log-in and log-out times, IP addresses, content and time of posts by users) for at least 60 days and submit the above information as required by laws and regulations. Internet content provision operators must regularly update information security systems for their websites with local public security authorities, and must also report any instances

of public dissemination of prohibited content. If an internet content provision operator violates these measures, the PRC government may revoke its Internet Content Provision License and shut down its websites.

*    *    *

Because Weimeng is an internet content provision operator, we are subject to laws and regulations relating to information security. To comply with these laws and regulations, ***Weimeng has completed the mandatory security filing procedures with local public security authorities. We regularly update our information security and content-filtering systems based on any newly issued content restrictions, and maintain records of user information as required by relevant laws and regulations. We have also taken measures to delete or remove links to content that, to our knowledge, contains information that violates PRC laws and regulations.***

Emphasis added.

26.    The statements in paragraphs 22-27 above were materially false and misleading above were false and/or misleading as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) Weibo lacks a requisite internet audio/video program transmission license, (ii) Weibo was posting certain commentary programs with content in violation of Chinese government regulations on its site; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times., Weibo's public statements were materially false and misleading at all relevant times.

C.      **The Truth Emerges**

27.      On June 22, 2017, *The Wall Street Journal* published an article

entitled "China Bans Political Content From Three More Platforms," stating that

The State Administration of Press, Publication, Radio, Film and Television of the

People's Republic of China ordered Weibo to stop streaming political videos that

were not in line with government regulations, stating in relevant part:

### China Bans Political Content From Three More Platforms

The websites of Weibo, Phoenix New Media, and ACFUN had streamed political videos deemed to be not in line with government regulations

*By Liza Lin in Shanghai and Alyssa Abkowitz in Beijing*
June 22, 2017 9:09 a.m. ET

***Chinese regulators on Thursday ordered three popular internet platforms to stop streaming political videos, expanding the crackdown on online political dialogue as China prepares for an important political handover.***

The websites of Weibo Corp., Phoenix New Media Ltd, and ACFUN had streamed political videos that were not in line with government regulations, and also promoted talk shows that contained negative viewpoints, the State Administration of Press Publication, Radio, Film and Television of the People's Republic of China said in an online statement.

Emphasis added.

28.      On June 22, 2017, Weibo issued a press release entitled "Weibo

Announces Receipt of a SAPPRFT Notice," stating in relevant part:

### Weibo Announces Receipt of a SAPPRFT Notice

NEWS PROVIDED BY
**Weibo Corporation**
22 Jun, 2017, 09:40 ET

BEIJING, June 22, 2017 /PRNewswire/ -- Weibo Corporation ("Weibo" or the "Company") (NASDAQ: WB), a leading social media in China, today announced that it became aware of a public notice issued by The State Administration of Press, Publication, Radio, Film and Television of the People's Republic of China (the "SAPPRFT"), stating that the ***SAPPRFT had recently requested the local competent authorities to take measures to suspend several companies' video and audio services due to their lacking of an internet audio/video program transmission license and posting of certain commentary programs with content in violation of government regulations on their sites, and Weibo is named as one of these companies.***

The Company is communicating with the relevant government authorities to understand the scope of the notice. It intends to fully cooperate with the relevant authorities. The Company will also evaluate the impact of this notice on its operations and its administrative options.

Emphasis added.

29.    On this news, Weibo's share price fell $4.71, or over 6% from its previous closing price to close at $72.25 per share on June 22, 2017, severely damaging investors.

### D.    ADDITIONAL SCIENTER ALLEGATIONS

30.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly

14

and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Weibo, their control over, and/or receipt and/or modification of Weibos' allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Weibo, participated in the fraudulent scheme alleged herein.

### E.   LOSS CAUSATION AND ECONOMIC LOSS

31.   During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Weibos' misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Weibos' share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The

economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

32.    At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Weibos' business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Weibos' securities to be artificially inflated. Plaintiff and other Class members purchased Weibos' securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## F.    <u>PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET</u>

33.    At all relevant times, the market for Weibo securities was an efficient market for the following reasons, among others:

> (a) Weibo securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b) During the Class Period, Weibo securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Weibo filed with the SEC periodic public reports during the Class Period;

(d) Weibo regularly communicated with public investors via established market communication mechanisms;

(e) Weibo was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Weibo was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

34.    As a result of the foregoing, the market for Weibo securities promptly digested current information regarding Weibo from all publicly available sources and reflected such information in Weibo' stock price. Under these circumstances, all purchasers of Weibo securities during the Class Period suffered similar injury through their purchase of Weibo' securities at artificially inflated prices, and a presumption of reliance applies.

35.    Alternatively, reliance need not be proven in this action because the

action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's true net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Weibo.

## G. NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

36.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

37.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

38.    Defendants are also liable for any false or misleading "forward-looking

statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Weibo who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this action on behalf of all individuals and entities who purchased or otherwise acquired Weibo ADSs on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

40.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Weibo securities were actively traded

on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Weibo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

41.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

42.    Plaintiffs have and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by the

defendants' respective acts as alleged herein;

(b)    whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)    whether the price of Weibo securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1)

deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Weibo securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

47.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Weibo securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Weibo as specified herein.

49.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts,

practices, and a course of conduct as alleged herein in an effort to assure investors of Weibo' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Weibo and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Weibo securities during the Class Period.

50.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4)

each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

51.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Weibo' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Weibo' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Weibo' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements

made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Weibo' securities during the Class Period at artificially high prices and were or will be damaged thereby.

53.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Weibo's lack of license and violation of the Chinese government's regulations, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Weibo securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

54.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

56.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.    The Individual Defendants acted as controlling persons of Weibo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had

the ability to prevent the issuance of the statements or to cause the statements to be corrected.

59.   In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.   As set forth above, Weibo, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

61.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

62.   This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)   Determining that this action is a proper class action, certifying

Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)    Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.


Dated: August 3, 2017                    **LEVI & KORSINSKY LLP**


                                         */s/ Eduard Korsinsky*
                                         Eduard Korsinsky (EK-8989)
                                         30 Broad Street, 24th Floor

28

New York, NY 10004
Tel : 212-363-7500
Fax : 212-363-7171
Email: ek@zlk.com

- and -


Nicholas I. Porritt*
Adam M. Apton*
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com
*Pro hac vice forthcoming

*Counsel for Plaintiff and for the proposed class.*